IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Denis L. Canty,                    :

          Plaintiff,               : Case No. 2:15-cv-2221

     v.                            : CHIEF JUDGE EDMUND A. SARGUS, JR.
                                     Magistrate Judge Kemp
Commissioner of Social Security,

          Defendant.               :

REPORT AND RECOMMENDATION

I.  Introduction

Plaintiff, Denis L. Canty, filed this action seeking review
of a decision of the Commissioner of Social Security denying his
applications for disability insurance benefits and supplemental
security income.  Those applications were filed on August 8,
2012, and alleged that Plaintiff became disabled on November 4,
2004.

After initial administrative denials of his claim,
Plaintiff was given a hearing before an Administrative Law Judge
on December 9, 2013.  In a decision dated February 24, 2014, the
ALJ denied benefits.  That became the Commissioner's final
decision on March 27, 2015, when the Appeals Council denied
review.

After Plaintiff filed this case, the Commissioner filed the
administrative record on July 30, 2015.  Plaintiff filed a
statement of specific errors on September 9, 2015, to which the
Commissioner responded on January 11, 2016.  Plaintiff filed a
reply brief on January 12, 2016, and the case is now ready to
decide.

II.  The Lay Testimony at the Administrative Hearings

Plaintiff, who was 61 years old as of the date of the
hearing and who has an eleventh grade education, testified as
follows.  His testimony appears at pages 41-60 of the

administrative record.

At the time of the administrative hearing, Plaintiff was living at the YMCA in downtown Columbus.  He did volunteer jobs there like taking out the trash once a month and cleaning up the restrooms.  He had gotten into the YMCA after being homeless for a time.

Plaintiff testified about his work history.  He worked at Rumpke Recycling through a temporary agency in 2009, which involved pulling items off a conveyor belt and throwing them into a bin.  Before that, he was a dishwasher at Capital University.

On a typical day, Plaintiff would walk to Faith Mission for breakfast, do some more walking, and then watch television.  He took the bus for appointments.  He had used heroin until six or seven months before the hearing.  Plaintiff said he socialized with a few friends.

Next, Plaintiff described problems with his right shoulder stemming from an automobile accident which occurred when he was younger.  He could lift 25 or 30 pounds.  Occasionally he had back cramps which affected his ability to walk, but he could walk for an hour or an hour and a half.  He had a hernia which affected his lifting, and also a disk problem which caused pain and numbness all along his spine and into his shoulders and feet. He had trouble bending over and squatting.  Plaintiff also heard voices which encouraged him to hurt others.  He kept his distance from people as a result.  He had been going to mental health counseling.

III.  <u>The Medical Records</u>

The medical records in this case are found beginning on page 282 of the administrative record.  The pertinent records be summarized as follows.

Plaintiff was seen at Southeast, Inc. on March 9, 2012, to establish a treatment relationship.  At that time, he was

-2-

experiencing shortness of breath on exertion.  He also had high
blood pressure and he reported an umbilical hernia which he had
had for years.  It was not causing him any current problems.  He
was referred to general surgery for the hernia and was also
referred for treatment of depression.  (Tr. 408-11).  A
psychological assessment done on that date stated that Plaintiff
had been depressed since 2001 and there had been consistent
symptoms over the years.  For the last two years, Plaintiff had
also been irritable.  He had a history of alcohol abuse but not
since 1996, and a history of heroin use as well.  He was
diagnosed with major depressive disorder, recurrent, as well as
opiod dependence.  His GAF was rated at 42.  (Tr. 412-16).  He
continued to receive mental heath treatment in 2012 and was still
using heroin at that time and into 2013.  He also reported having
hallucinations, particularly seeing wings on people, as well as
paranoid thoughts and depression.  Medication had improved his
mood.

Records from September, 2012, show that Plaintiff continued
to have periodic problems with his hernia.  It was painful during
that office visit, which was with Dr. Fryxell.  (Tr. 433-35).  He
also reported knee pain but was walking several miles per day and
this helped the pain.  During an office visit on March 7, 2013,
he continued to report abdominal pain at the site of the hernia.
By December, 2013, he was reporting that it was much worse and
occurred constantly.  A hernia repair was scheduled for February,
2014.  (Tr. 519-20).

Dr. Nayyar evaluated Plaintiff's physical condition in 2013,
and reported that Plaintiff had mostly normal findings (except
for the hernia) and that he had only one moderate limitation,
that of walking; every other physical activity was only slightly
or not at all limited.  (Tr. 453-57).

Although Plaintiff was treated by Dr. Tichy for his

psychological issues, Dr. Fryxell completed a form on November 20, 2013, on which he rated Plaintiff's mental capacity. He believed Plaintiff had a poor ability to perform any work-related functions and would miss work 2-3 times per week based on psychological symptoms. (Tr. 515-16). At the same time, Dr. Fryxell expressed an opinion about some of Plaintiff's physical capabilities, concluding that Plaintiff would not miss work due to physical problems but that his lifting was limited to 20 pounds. (Tr. 517-18).

The record also contains opinions from state agency reviewers. From a physical standpoint, both reviewing physicians concluded that Plaintiff did not have any severe physical impairments. Dr. Johnston, a psychologist, found severe psychological impairments including a personality disorder and believed that Plaintiff could understand and remember simple instructions, and also carry them out in a routine work setting which was not fast-paced, did not have strict production standards, and which did not change much. She also thought him capable of infrequent superficial social interactions. (Tr. 96-99).

IV.  <u>The Vocational Testimony</u>

Mark Pinty was called to testify as a vocational expert at the administrative hearing. His testimony begins at page 60 of the administrative record.

Mr. Pinty described Plaintiff's past employment as a salvage laborer as a medium strength unskilled job. The dishwasher job was the same.

Mr. Pinty was then asked some questions about someone with Plaintiff's background and who could work at the medium exertional level. That person could carry out simple instructions where the pace of productivity was not dictated by external sources over which the individual had no control, such

-4-

as an assembly line or belt.  The person could make judgments on
simple work and respond appropriately to usual work situations
and changes in a routine work setting that was repetitive from
day to day with few unexpected changes.  He or she could also
respond appropriately to occasional supervision but not high-
pressure or over-the-shoulder supervision.  Finally, the person
could tolerate occasional superficial interaction with co-workers
on trivial matters and could not work with the general public.
Mr. Pinty said that someone with those restrictions could do the
dishwashing job but not the salvage job, and could also be a
floor waxer, landscape worker, and industrial cleaner.  None of
those jobs required more than occasional bending.  A restriction
to light work would eliminate them.

Next, Mr. Pinty was asked whether someone with the inability
to deal with work stress for up to one-third of the work day and
who could not demonstrate reliability to report to work on time
or work in close proximity to others without distracting either
them or himself could work.  Mr. Pinty said these restrictions
were all work-preclusive, as would being off task for a third of
the day or being absent more than one day per month.

## V.  The Administrative Law Judge's Decision

The Administrative Law Judge's decision appears at pages 9-
21 of the administrative record.  The important findings in that
decision are as follows.

The Administrative Law Judge found, first, that Plaintiff
met the insured status requirements of the Social Security Act
through September 30, 2006.  Second, he found that Plaintiff had
not engaged in substantial gainful activity since his alleged
onset date of November 4, 2004.  Going to the second step of the
sequential evaluation process, the ALJ concluded that Plaintiff
had severe impairments including hypertension, an umbilical
hernia, major depressive disorder, personality disorder, and a

-5-

history of opiod dependence and alcohol dependence.  The ALJ also
found that these impairments did not, at any time, meet or equal
the requirements of any section of the Listing of Impairments (20
C.F.R. Part 404, Subpart P, Appendix 1).

Moving to step four of the sequential evaluation process,
the ALJ found that Plaintiff had the residual functional capacity
to perform the exertional requirements of medium work.
Additionally, he could understand, remember, and carry out simple
instructions where the pace of productivity was not dictated by
external sources over which the he had no control, such as an
assembly line or conveyor belt.  Plaintiff also had the ability
to make judgments on simple work and respond appropriately to
usual work situations and changes in a routine work setting that
was repetitive from day to day with few unexpected changes.  He
could also respond appropriately to occasional supervision but
not high-pressured or over-the-shoulder supervision.  Finally, he
could tolerate occasional superficial interaction with co-workers
on trivial matters, defined as dispensing and sharing factual
information that is not likely to generate an adversarial setting
and could not work in tandem with coworkers or with the general
public at all.

With these restrictions, the ALJ concluded that Plaintiff
could perform his past relevant work as a dishwasher.  He could
also perform the medium jobs identified by the vocational expert,
including floor waxer, landscaper worker, and industrial cleaner.
The ALJ further determined that these jobs existed in significant
numbers in the regional and national economies.  Consequently,
the ALJ decided that Plaintiff was not entitled to benefits.

VI.  <u>Plaintiff's Statement of Specific Errors</u>

In his statement of specific errors, Plaintiff raises these
issues: (1) the ALJ did not give proper weight to the opinion of
Dr. Fryxell about Plaintiff's lifting capacity; (2) the ALJ did

not give proper weight to Dr. Fryxell's opinion about Plaintiff's mental capacity; and (3) the ALJ incorrectly determined that Plaintiff could perform medium work.  These issues are evaluated under the following legal standard.

    Standard of Review.  Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'" Id.  LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole.  Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985).  Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence.  Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

    A.  Dr. Fryxell's Opinion as to Physical Capacity

    As noted above, Dr. Fryxell completed a form on which he limited Plaintiff to lifting no more than twenty pounds.  That is significant in this case because, under the Medical-Vocational

Guidelines, if Plaintiff could only do light or sedentary work, he would be considered disabled.  The ALJ rejected that limitation, stating the following rationale for doing so.

The ALJ began by discussing Plaintiff's umbilical hernia, which, apart from benign hypertension, was the only severe physical impairment the ALJ found to exist.  He found that the hernia "has [not] significantly interfered with [Plaintiff's} physical functioning or ability to perform daily activities," noting that the hernia always self-corrected and that if it was as severe as Plaintiff indicated to Dr. Fryxell, he would have pursued surgery when it was recommended.  The ALJ also noted that care of the hernia "has been entirely conservative and routine in nature." (Tr. 18).  That led the ALJ to conclude that Plaintiff could perform medium work.

Turning to the opinion evidence, the ALJ first discussed Dr. Nayyar's examination findings.  The ALJ concluded that the limitations described in Dr. Nayyar's report were consistent with the results of the physical examination, which showed normal range of motion, except for the limitation on walking, which the ALJ viewed as inconsistent with those findings and with Plaintiff's own testimony about the amount of walking he did on a daily basis. (Tr. 19-20).  Next, the ALJ discussed Dr. Fryxell's opinion, correctly observing that as a treating source opinion, it was entitled to be given controlling weight unless unsupported by medically acceptable clinical and laboratory diagnostic techniques or inconsistent with other substantial evidence.  He then gave these specific reasons for assigning it little weight:

(1) it was inconsistent with the objective medical evidence (apparently Dr. Nayyar's examination);

(2) it relied heavily on Plaintiff's self-report of symptoms and limitations;

(3) there is no objective medical evidence supporting a

-8-

twenty-pound lifting restriction;

(4) the opinion was inconsistent with Plaintiff's statement that he could lift 35 pounds; and

(5) it was inconsistent with Plaintiff's testimony that he worked out and walked long distances.

The ALJ also stated, as part of his rationale (and, as Plaintiff points out, incorrectly), that "Dr. Fryxell is a psychiatrist who has not treated the claimant for his hernias. As such, his opinion with respect to the claimant's physical condition and any resulting limitations is not credible." (Tr. 21). Finally, he rejected the opinions of the state agency reviewers on the issue of Plaintiff's physical condition because they did not have additional records available to them which demonstrated a severe impairment.

It has long been the law in social security disability cases that a treating physician's opinion is entitled to weight substantially greater than that of a nonexamining medical advisor or a physician who saw plaintiff only once. 20 C.F.R. §404.1527(c); see also Lashley v. Secretary of H.H.S., 708 F.2d 1048, 1054 (6th Cir. 1983); Estes v. Harris, 512 F.Supp. 1106, 1113 (S.D. Ohio 1981). However, in evaluating a treating physician's opinion, the Commissioner may consider the extent to which that physician's own objective findings support or contradict that opinion. Moon v. Sullivan, 923 F.2d 1175 (6th Cir. 1990); Loy v. Secretary of HHS, 901 F.2d 1306 (6th Cir. 1990). The Commissioner may also evaluate other objective medical evidence, including the results of tests or examinations performed by non-treating medical sources, and may consider the claimant's activities of daily living. Cutlip v. Secretary of HHS, 25 F.3d 284 (6th Cir. 1994). No matter how the issue of the weight to be given to a treating physician's opinion is finally resolved, the ALJ is required to provide a reasoned explanation so that both the claimant and a reviewing Court can determine why

-9-

the opinion was rejected (if it was) and whether the ALJ considered only appropriate factors in making that decision. Wilson v. Comm'r of Social Security, 378 F.3d 541, 544 (6th Cir. 2004).

Here, Plaintiff argues that the ALJ's decision was flawed n several respects. He asserts that the ALJ did not specify which medical evidence was inconsistent with Dr. Fryxell's opinion, that the bulk of the medical findings dealt with Plaintiff's joint and back pain and not his hernia, that Plaintiff was not given the chance to explain why he did not pursue surgical treatment for his hernia, that working out (in a swimming pool) and walking are not inconsistent with a 20 pound lifting restriction, that there is no indication of what symptoms Plaintiff might have self-reported to Dr. Fryxell, and, finally, that Dr. Fryxell is not a psychiatrist as the ALJ apparently thought him to be. The Commissioner counters that each of the reasons given by the ALJ has substantial support in the record and that the ALJ was entitled to give some weight both to the state agency physicians' opinions, who did not think Plaintiff had any severe physical impairments, and to Dr. Nayyar's evaluation, noting that Dr. Fryxell was the only doctor to suggest a lifting restriction inconsistent with the performance of medium work.

First, the Court concludes that the ALJ's decision satisfied the "articulation" requirement set out in 20 C.F.R. §404.1527(c) and §416.927(c), and as explained in Wilson, supra. The reasons relied on by the ALJ are, both in and of themselves and in the context of his entire decision, sufficiently clear and specific so that both Plaintiff and the Court can understand why the ALJ rejected Dr. Fryxell's opinion. That leaves only the question of whether the reasons the ALJ gave are well-supported enough to meet the "substantial evidence" standard. For the following reasons, the Court concludes that they are.

-10-

First, although the ALJ mistakenly determined that Dr.
Fryxell was a psychiatrist, that was not one of the primary
reasons given for discounting his opinion, and, as the
Commissioner points out, Dr. Fryxell did not actually treat
Plaintiff for his hernia but simply referred him on multiple
occasions for surgery.  Second, there are no objective test
results or clinical findings concerning Plaintiff's hernia.  All
of the information given to Dr. Fryxell apparently came from
Plaintiff, because there is no other recorded source of that
information, and also because Plaintiff testified that he
suggested lifting restrictions to Dr. Fryxell.  Third, there is
no indication that Dr. Nayyar limited his examination and
findings simply to Plaintiff's joint or back pain; there is no
reason to believe that he was not tasked with evaluating
Plaintiff's entire medical condition or that he did not do so.
Fourth, there are inconsistencies between Dr. Fryxell's opinion
and Plaintiff's own view of his lifting capacity.  Even though
Plaintiff's own opinion also suggests a limitation which is below
the maximum required for medium work, that discrepancy casts some
doubt on the accuracy of Dr. Fryxell's opinion.  All of these
reasons, supported by the record, could cause a reasonable person
to discount to some degree Dr. Fryxell's lifting restriction -
but, at the same time, to give some weight to the idea that
Plaintiff had physical restrictions, an opinion which the state
agency reviewers did not express.  Reasonable support may also
exist for the opposite conclusion, but that is not the issue
here; "[t]he findings of the Commissioner are not subject to
reversal merely because there exists in the record substantial
evidence to support a different conclusion."  Buxton v. Halter,
246 F.3d 762, 772 (6th Cir. 2001).  The Court finds no reversible
error in the way that the ALJ evaluated Dr. Fryxell's opinion.

B.  <u>Dr. Fryxell's Opinion as to Mental Capacity</u>

Dr. Fryxell also expressed an opinion as to Plaintiff's mental functional limitations as they relate to work activity. The ALJ did not adopt that opinion, either.  He reasoned as follows:

> The ALJ grants little weight to Dr. Fryxell's opinion. His conclusion with respect to the claimant's missing 2-3 days per week is internally inconsistent with his opinion that the claimant's condition and symptomology (sic) would not cause him to miss work.  Moreover, the doctor's opinion is inconsistent with and unsupported by the totality of the evidentiary record, including progress noted from September 18, 2012, which shows his mood had brightened (as evidenced by his smiling and laughing) and notes his feeling of hope while discussing mental health treatment and about his possibly contacting Alvis House for assistance with employment and other support.

(Tr. 22).  The ALJ then assigned significant weight to the opinion of the state agency psychologists because of their training and experience and because those evaluations were "consistent with and well supported by the evidence of record as a whole...."  <u>Id</u>.  Additionally, the ALJ explained that disabling psychological limitations were not supported by Plaintiff's activities of daily living and contradicted by Plaintiff's "longstanding history of noncompliance with medications" and pointed out he stopped working due to being laid off rather than due to any disabling impairment.  (Tr. 23-24).  Finally, earlier in his decision, the ALJ noted that the last medical record, dated December 12, 2013, did not show any mental health complaints or treatment, and that Plaintiff had not had any such treatment in the preceding two months.

Again, Plaintiff argues that the ALJ did not properly evaluate this treating source opinion, particularly with respect to how many days of work Plaintiff would miss due to psychological symptoms.  He notes that the other opinion of Dr.

-12-

Fryxell's which did not have that limitation dealt with physical, as opposed to psychological, impairments, so that the two are not contradictory.  He also contends that the general reference to the evidentiary record, supported by citation to a single treatment note, is too vague to constitute a valid reason for rejecting the opinion, and also mischaracterizes the treatment notes as a whole.  Since these were the only two reasons offered by the ALJ, Plaintiff concludes that the case should be remanded for a more thorough review of Dr. Fryxell's opinion.  The Commissioner, in turn, argues that the ALJ's assessment of Plaintiff's psychological condition was supported by Dr. Johnston's opinion – not mentioned in Plaintiff's argument – and that Dr. Fryxell's records do not show either that he personally treated Plaintiff for mental health issues or reported symptoms that supported the extreme limitation Dr. Fryxell noted on the form which he completed.  Finally, the Commissioner notes that Dr. Fryxell is not a specialist in the field of mental health and that this is a valid reason for preferring Dr. Johnston's assessment.

This is a close issue.  The Commissioner has offered reasons which were not cited by the ALJ and which this Court cannot consider in determining if the ALJ's decision comports with §404.1527(c).  See, e.g., Potts v. Astrue, 2012 WL 5878859, *2 (N.D. Ohio November 21, 2012)("Any attempt by this Court to uphold an ALJ's decision because of the presence of existing evidence that the ALJ did not expressly rely upon would be a *post hoc* rationalization").  One of the two reasons given by the ALJ is clearly wrong; there is no inconsistency between Dr. Fryxell's two opinions, one of which said that Plaintiff would not miss work for physical reasons, and the other of which said he would do so for psychological reasons.  The ALJ's citation to the totality of the evidence as either supporting Dr. Johnston's opinion, or not supporting Dr. Fryxell's, comes very close to

-13-

being the type of vague and indefinite reference which does not
satisfy the articulation requirement of the regulation.  "[I[t is
not enough to dismiss a treating physician's opinion as
'incompatible' with other evidence of record; there must be some
effort to identify the specific discrepancies and to explain why
it is the treating physician's conclusion that gets the short end
of the stick." Friend v. Comm'r of Social Security, 375 Fed.
Appx. 543, 552 (6th Cir. Apr.28, 2010).  Nevertheless, the ALJ
did cite to one specific treatment note which is not particularly
supportive of Dr. Fryxell's conclusion, and he also made a point
of saying that Plaintiff's activities of daily living, including
the ones which showed that he could perform mental tasks and
engage in social interactions, showed that Plaintiff could do
what was "necessary for obtaining and maintaining employment."
(Tr. 23).  His summary of other treatment notes also includes
some commentary about their lack of support for allegations of
disabling symptoms.  Thus, while it would have been better had
the ALJ consolidated all of these references and given a more
precise explanation of his rationale, the Court cannot find
reversible error here.  It is also worthwhile to note that the
ALJ found a number of limitations arising from Plaintiff's mental
impairment and included them into the residual functional
capacity finding, but the vocational expert did not see them as
completely work-preclusive.  Thus, there is no basis for remand
on this issue.                    C.  Medium Work

    Plaintiff's final argument is that without a consultive
examination, and without any opinions about Plaintiff's ability
to lift apart from the one expressed by Dr. Fryxell, the ALJ had
no basis for determining that Plaintiff could do medium work.
The Commissioner responds that this finding was within the ALJ's
"zone of choice" given the variety of medical opinions in the
record.  The Court agrees.

    As this Court said in Conkle v. Comm'r of Social Security,

-14-

2015 WL 1046197, *6 (S.D. Ohio March 10, 2015),

> The Commissioner is correct that an ALJ does not need
> to adopt the precise restrictions contained in any
> particular medical opinion when formulating a residual
> functional capacity finding.  "Although the ALJ may not
> substitute his opinion for that of a physician, he is
> not required to recite the medical opinion of a
> physician verbatim in his residual functional capacity
> finding." Poe v. Comm'r of Social Security, 342
> Fed.Appx. 149, 157 (6th Cir. Aug.18, 2009).  "The
> residual functional capacity determination is expressly
> reserved for the Commissioner." Ford v. Comm'r of
> Social Security, 114 Fed.Appx. 194, 198 (6th Cir.
> Nov.10, 2004).  As this Court has said, an "ALJ is free
> to resolve issues of credibility as to lay testimony,
> or to choose between properly submitted medical
> opinions," in arriving at a residual functional
> capacity finding. Davis v. Comm'r of Social Security,
> 2013 WL 6008697, *9 (S.D. Ohio Nov.13, 2013), adopted
> and affirmed 2013 WL 6632657 (S.D. Ohio Dec.17, 2013).
> Where there is enough evidence in the record to support
> the ALJ's conclusions as to various aspects of the
> residual functional capacity finding, those conclusions
> are not reversible simply because they are not drawn
> word for word from specific medical opinions in the
> record. Feigenbaum v. Comm'r of Social Security, 2014
> WL 201483 (N.D. Ohio Jan.17, 2014).

Here, the ALJ considered Plaintiff's statements, his activities
of daily living, and the three medical opinions which imposed no
limitations on Plaintiff's lifting abilities, and reached the
conclusion that Plaintiff could do medium work.  A reasonable
person could, on this record, have reached that same conclusion.
As a result, the Court finds no error in the ALJ's decision about
Plaintiff's ability to perform a range of medium work which was
limited only by his psychological impairments.  The ALJ's
decision should therefore be affirmed.

### VII.  Recommended Decision

Based on the above discussion, it is recommended that the
Plaintiff's statement of errors be overruled and that judgment be
entered in favor of the defendant Commissioner of Social

-15-

Security.

### VIII.   Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a <u>de novo</u> determination of those portions  of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation <u>de novo</u>, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  <u>See Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981).

<u>/s/ Terence P. Kemp</u>

United States Magistrate Judge
